IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                          CR No. 02-M-284

KIMBERLY JONES
and TAIKECHA WADE,

        Defendants.

## FINDINGS OF FACT
## AND ORDER OF DETENTION

Having heard the testimony of the witnesses at the detention/preliminary hearing conducted May 10, 2002, and having taken judicial notice of the file and Pretrial Services Report, the Court finds clear and convincing evidence demonstrating that:

1. On May 8, 2002, New Mexico State Police Officer Rudy Mora was on patrol on Interstate 40, west of Albuquerque near mile marker 146-149.

2. Officer Mora was traveling in the "fast" or left-hand lane and observed two east-bound vehicles ahead of him. The second vehicle, a blue van, was extremely close to the lead vehicle, a blue sedan. Indeed, the blue van was within two car lengths of the blue sedan.

3. The driver of the blue van then quickly entered the fast or passing lane, overtook the blue sedan, veered back into the right lane and applied the vehicle's brakes. This maneuver caused the driver of the blue sedan to suddenly brake to avoid a collision.

4. Upon observing this unsafe driving, Officer Mora engaged his emergency equipment, pursued the blue van and pulled it over.

5. Defendant Taikecha Wade ("Wade") was the driver of the blue van; Kimberly Jones ("Jones") occupied the middle back seat. Jones was asleep and unbuckled.

6. Officer Mora approached the van on the passenger side and spoke to the driver, Wade, through the lowered right passenger window. He identified who he was a why he had stopped the vehicle. He requested Wade's driver's license information and registration or car rental papers.

7. Wade handed her vehicle identification and personal identification documents to Officer Mora, and in doing so, appeared quite nervous. Her hands were trembling and the papers she handed to Officer Mora were shaking.

8. Officer Mora asked Wade to step down from her vehicle and to sit in the right front passenger seat of his police vehicle. Officer Mora stayed outside his police vehicle, with the door opened, while he prepared the citation. Jones, on the other hand, remained in the blue van.

9. As Officer Mora was preparing the citation, Wade stated to him that she had been in California for several days and that the purpose of her trip was to visit her sister, who was a college student. She also said that her fiancé was a detective in California.

10. While Wade remained in the police cruiser, Officer Mora went to the blue van to ask Jones for her identification. Jones admitted that her seatbelt was unbuckled as she was asleep. She produced her identification to Officer Mora.

11. Officer Mora advised her that he would issue her a citation, and while writing the citation for a seatbelt infraction, Jones told Officer Mora that she and Wade were coming from California after visiting Wade's fiancé. Jones also stated that they had stayed at a Hampton Inn in California, but quickly clarified her statement to the effect that she, Jones, had stayed at the Hampton Inn because Wade was staying with her boyfriend. Jones made no mention of visiting Wade's sister.

12. While Officer Mora was preparing the Jones citation and talking to Jones, he observed Wade watching them intently and nervously. Wade remained seated in the passenger seat of the police cruiser, but her feet were on the ground. Wade kept shifting her legs nervously back and forth and kicking at the ground.

13. Officer Mora returned to his police cruiser to hand Wade the citation and asked if he could ask some additional questions. Wade consented. Officer Mora then asked Wade for her fiancé's name, and she said his name was Kevin Turner. When Officer Mora then asked for Detective Turner's phone number, Wade gave a number with a 443 area code. That area code, however, is for Maryland, not California.

14. Because of this inconsistency, Officer Mora asked Wade where Detective Turner was, and Wade advised that he was in Baltimore. This statement, of course, conflicted with Jones' statement that Wade had stayed with her fiancé in California. Officer Mora asked Wade additional questions concerning her fiancé, and asked where he worked. She responded "LAPD."

15. Because Wade had previously stated that the purpose of the trip was to visit her sister, Officer Mora asked Wade for her sister's name, and Wade stated her sister was named Kim Pennington. When asked for Kim's phone number, Wade was unable to provide it. Officer Mora then asked where Wade had stayed during her trip to California, and Wade stated that she had stayed at the Hampton Inn. This statement conflicted with Jones' claim that Wade had stayed with her boyfriend in California.

16. Faced with Wade's nervous conduct and the multiple inconsistencies in her and Jones' statements, Officer Mora went back to the blue van and asked Jones if he could ask her some additional questions. She, too, consented and said the reason that she would be cooperative was

3

because her fiancé, whom she identified as "Kevin," was a Maryland State trooper. Officer Mora asked Jones about Wade's fiancé's name and Jones replied that his name was Berry. This statement contradicted Wade's identification of her fiancé. Officer Mora then asked if Jones had seen "Berry" in California and Jones advised that she had. Jones' response contradicted Wade's statement that her fiancé was in Baltimore.

17. Officer Mora then asked Jones if she was carrying any marijuana, cocaine, methamphetamine, heroin, large amounts of money or illegal firearms, and Jones said that she was not. Officer Mora then asked if Jones was responsible for everything in the van, and Jones said no, that she was responsible only for her purse.

18. Officer Mora sought permission to search Jones' purse and permission was given. No contraband was found in Jones' purse.

19. Officer Mora then returned to his police cruiser and asked Wade if she was carrying any large amounts of money, illegal firearms, cocaine, methamphetamine, heroin or marijuana. During this exchange, Wade maintained eye contact with the officer until he mentioned "marijuana." When he asked about marijuana, Wade looked away nervously.

20. Officer Mora asked Wade for permission to search the blue van and Wade consented. Officer Mora then provided Wade with a written consent form, and after Wade read it, she signed the form. Officer Mora asked Wade if she was responsible for everything in the vehicle, and Wade stated that she was.

21. Officer Mora is a certified dog handler. His certified drug-sniffing dog "Chica" was in his car. Officer Mora had Jones alight from the vehicle and then had Chica, his drug dog, walk around the exterior and then into the interior of the van. Chica alerted to the back of the van.

22. Officer Mora found three large bags in the back of the van, each containing packages wrapped as if they were gifts. This was the bag to which Chica alerted.

23. Officer Mora cut one package open and saw a substance that appeared to be marijuana. The marijuana was wrapped in plastic, smeared with mustard, and then wrapped again in plastic. The packages were then gift wrapped.

24. Officer Mora states that wrapping marijuana in this fashion, that is with agents like mustard, is a common method of masking the marijuana odor.

25. The substance seized from the various packages was field tested, and it tested positive for the presence of marijuana. The gross weight seized was approximately 300 lbs.

26. Both Wade and Jones were arrested and, subsequent to Jones being advised of her rights, made inculpatory statements concerning "feelings" that she had that drugs were in the vehicle because a friend had asked them to carry the bags from Las Vegas to Baltimore.

27. Contrary to Wade's representation to Officer Mora, she does not have a sister named Kim Pennington, and the purpose of her trip was not to visit her sister. Wade does not have a sister enrolled in college in California.

28. Both Wade and Jones made numerous misrepresentations to Officer Mora. The misrepresentations were intentionally made to deceive the officer and to hide the true nature of the Defendants' conduct, actions, itinerary, travels and plans.

29. Both Defendants have criminal convictions for drug-related offenses.

30. Defendant Jones previously violated conditions of her probation.

31. Both Defendants have been deceitful in their representations to investigating officers.

32. Based on these findings, the Court finds probable cause to believe that a crime was committed and to accuse Defendants of the crime with which they have been charged.

33. The Court finds that the presumption under 18 U.S.C. § 3142 is applicable, and that Defendants have not overcome the presumption of detention.

34. Given Defendants' misrepresentation and deceitful conduct, the Court is not confident that they would comply with conditions of release.

At this time, the Court finds that there are no terms or conditions under which the Defendants can be released and orders that they both be detained.

*[signature]*
Lorenzo F. Garcia
United States Magistrate Judge